JUDGE NATHAN

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

13 CV 2066

---

THE MERGER FUND, THE MERGER FUND VL, GS MASTER TRUST, MLIS WESTCHESTER MERGER ARBITRAGE UCITS FUND and DUNHAM MONTHLY DISTRIBUTION FUND,

*Plaintiffs,*

- against -

METROPCS COMMUNICATIONS, INC., W. MICHAEL BARNES, JACK F. CALLAHAN, JR., C. KEVIN LANDRY, ROGER D. LINQUIST, ARTHUR C. PATTERSON, and JAMES N. PERRY JR.,

*Defendants.*

---

Civil Action No.

**COMPLAINT**

**Jury Trial Demanded**



RECEIVED
MAR 2 8 2013
U.S.D.C. S.D. N.Y.
CASHIERS

---

Plaintiffs, by and through their undersigned attorneys, allege the following upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters based upon the investigation made by Plaintiffs' counsel, which included the review and analysis of information obtained from numerous public sources, including, *inter alia*: Securities and Exchange Commission ("SEC") filings by MetroPCS Communications, Inc. ("MetroPCS" or the "Company"), Company press releases and media reports issued by and disseminated by MetroPCS, and other publicly available information concerning MetroPCS.

**SUMMARY OF ACTION**

1.     Plaintiffs The Merger Fund, The Merger Fund VL, GS Master Trust, MLIS Westchester Merger Arbitrage UCITS Fund and Dunham Monthly Distribution Fund (collectively, the "Plaintiffs") bring this action against MetroPCS and its Board of

Directors (the "Board" or the "Defendants," defined more fully below) for violations of Section 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. 78n(a) (the "Exchange Act"), and Rule 14a-9, promulgated thereunder ("Rule 14a-9"). Plaintiffs also bring a claim against Defendants for their breaches of fiduciary duties of care, loyalty and candor. These Defendants, acting recklessly, in bad faith and in conscious or reckless disregard of their duties, caused MetroPCS to issue a materially false and misleading March 2013 Proxy Statement (defined below) in connection with their attempt to sell the Company to Deutsche Telekom AG ("Deutsche Telekom"). The March 2013 Proxy Statement was not only false and misleading when it was issued on October 3, 2012, but it remains false and misleading today. Defendants have deliberately, disloyally and in bad faith failed to take steps to correct, amend or update the March 2013 Proxy Statement when circumstances material to MetroPCS and its shareholders required them to do so.

2.      Deutsche Telekom has been looking for an alternative plan for T-Mobile since its $39 billion attempt to sell T-Mobile to AT&T collapsed in late 2011 due to its failure to obtain regulatory approval. Analysts have opined that Deutsche Telekom has been seeking to divest T-Mobile for years either through an initial public offering or a direct sale. The Proposed Transaction (defined below) would permit Deutsche Telekom to accomplish its long sought after divestiture. Through it, Deutsche Telekom will succeed in transforming its privately held subsidiary T-Mobile into a publicly traded company and Deutsche Telekom will obtain for itself majority control over the Surviving Entity (defined below) and instant liquidity. The Proposed Transaction represents a windfall to Deutsche Telekom at the expense of the MetroPCS shareholders.

2

3.      The consideration offered in the Proposed Transaction to MetroPCS shareholder of $4.06 in cash plus 26% of the Surviving Entity undervalues MetroPCS on a standalone basis, and does not reflect the recent strong 2012 financial performance by MetroPCS. Defendants' assent to the unfair allocation of merger consideration between Deutsche Telekom and MetroPCS and their recommendation of the Proposed Transaction to MetroPCS shareholders relies upon stale and inaccurate projections and includes an unexplained and impermissible deduction from the MetroPCS equity value of $1.5 billion for future spectrum purchases. Moreover, Defendants' allocation and the recommendation to vote in favor of the Business Combination Agreement (defined below) fails to address the impact of the terms and size of the DT Notes (defined below) on MetroPCS's current shareholders and on the future Surviving Entity.

4.      MetroPCS shares increased from $11.52 to $13.57 after the Company reported that it was in talks with Deutsche Telekom. However, after the announcement of the Proposed Transaction on October 3, 2012, MetroPCS shares declined nearly 10% and continued to decline thereafter. MetroPCS shares are now trading at $10.52, down approximately 24% from their pre-announcement price.

5.      Since the Proposed Transaction was announced, shareholders representing more than 11% of the Company's outstanding common stock have expressed public reservations concerning the Proposed Transaction. In addition, on March 28, 2013, Institutional Shareholders Services ("ISS") a prominent proxy adviser which advises large shareholders regarding how to vote in corporate elections, recommended that MetroPCS shareholders should vote against the Proposed Transaction based on its

opinion that the MetroPCS shareholders would receive an unfair allocation and the potential for MetroPCS to continue to thrive as a standalone company.

6.     The shareholder vote, now scheduled for April 12, 2013, must be enjoined because the March 2013 Proxy Statement contains material misstatements and/or omits to state material facts, thus precluding MetroPCS shareholders from fully understanding the consequences of the Proposed Transaction and casting an informed vote.  Accordingly, Plaintiffs seek a preliminary injunction to delay any shareholder meeting until such time as the March 2013 Proxy Statement can be amended to cure Defendants' violations of the law and provide full, complete and accurate information regarding the Proposed Transaction.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under 28 U.S. § 1331 (federal question jurisdiction) insofar as the claims herein arise under Sections 14(a) and 20(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9, promulgated thereunder [17 C.F.R. § 240.l4a-9].  The Court also has jurisdiction under 28 U.S.C. § 1367 as to the state law claims pleaded herein, insofar as they arise out of the same transactions and occurrences as the Federal claims.

8.     Venue is properly in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C §78aa.  Many of the acts and conduct complained of herein occurred in substantial part in this District.  Plaintiffs are also located within this District.

9.     In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate

commerce, including the mails and telephonic communications and the facilities of the NYSE Euronext ("NYSE").

## PARTIES

10.     Plaintiffs are, and have been at all relevant times, owners of MetroPCS common stock.  Plaintiffs hold over 12.5 million shares of MetroPCS common stock. Plaintiffs are shareholders of record as defined in the March 2013 Proxy Statement.

11.     Defendant MetroPCS is a Delaware corporation and maintains its principal executive offices at 2250 Lakeside Boulevard, Richardson, Texas 75082.  The Company is a wireless telecommunications carrier that, together with its subsidiaries, provides wireless broadband mobile services in the United States.  MetroPCS is a provider of no-annual-contract, unlimited wireless communications service for a flat fee. The Company is the fifth largest facilities-based wireless carrier in the United States.  As of June 30, 2012, MetroPCS had approximately 9.3 million subscribers.  MetroPCS's common stock is traded on the NYSE under the ticker symbol "PCS".  As of July 20, 2012, there were 363,424,295 shares of MetroPCS common stock outstanding.

12.     (a)     Defendant Roger D. Linquist ("Linquist") is a co-founder of MetroPCS and has served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board since its inception.  Linquist served as the Company's President from its inception through June 2007 and as Secretary from its inception through October 2004.

        (b)     Defendant Arthur C. Patterson ("Patterson") has served as a MetroPCS director since its inception.

(c)     Defendant W. Michael Barnes ("Barnes") has served as a MetroPCS director since May 2004.   Following the consummation of the Proposed Transaction Defendant Barnes will continue be a director of Surviving Entity.

(d)     Defendant John F. Callahan, Jr. ("Callahan") has served as a MetroPCS director since its inception.

(e)     Defendant C. Kevin Landry ("Landry") has served as a MetroPCS director since August 2005.

(f)     Defendant James N. Perry ("Perry") has served as a director of MetroPCS since November 2005.   Following the completion of the Proposed Transaction, Defendant Perry will be a director of the Surviving Entity.

(g)     The Defendants listed above at ¶9(a)-(f) are collectively referred to herein as the "Board" or "Defendants."

(h)     All of the Defendants except Defendant Linquist are members of the special committee (the "Special Committee"). Defendant Perry is chairman of the Special Committee.

13.     Non-party Deutsche Telekom is organized in Germany.   Non-party T-Mobile Global Zwischenholding GmbH is organized in Germany and is a direct, wholly-owned subsidiary of Deutsche Telekom.   T-Mobile is based in Bellevue, Washington and is the United States wireless operation of Deutsche Telekom.   T-Mobile owes $14.4 billion in intercompany debt to Deutsche Telekom.

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

14.     On October 3, 2012, the Company filed a Form 8-K with the SEC disclosing the terms of the Business Combination Agreement entered into by Deutsche Telekom, T-Mobile and MetroPCS (the "Business Combination Agreement"). Under the terms of the Business Combination Agreement, which contemplates a recapitalization, MetroPCS will declare a 1-for-2 reverse stock split and make a $1.5 billion cash payment to its existing shareholders (approximately $4.06 per share prior to the reverse stock split); MetroPCS will then acquire all of T-Mobile's stock from T-Mobile's parent Deutsche Telekom; in exchange for T-Mobile's stock, Deutsche Telekom will receive a 74% stake in the surviving entity; and MetroPCS shareholders will be left with a 26% stake in the surviving entity. Under the terms of the Business Combination Agreement, the combined company will keep the T-Mobile name (the "Surviving Entity").

15.     In addition, as part of the Business Combination Agreement, Deutsche Telekom will also roll the existing $14.4 billion intercompany debt owed to Deutsche Telekom by T-Mobile into new $15 billion senior unsecured notes (the "DT Notes") to be issued by the Surviving Entity. Deutsche Telekom will also provide the Surviving Entity with a $500 million unsecured revolving credit facility and a $5.5 billion "backstop commitment" for certain MetroPCS third-party financing transactions. As a result, the DT Notes will become an obligation of the Surviving Entity. The Business Combination Agreement and the DT Notes together constitute the "Proposed Transaction".

**Market Reaction to the Proposed Transaction**

16.     In response to MetroPCS's confirmation that it was in talks with Deutsche Telecom, MetroPCS shares rose from $11.52 to $13.57.  When the market learned of the terms of the Proposed Transaction on October 3, 2012, MetroPCS shares dropped nearly 10% from $13.57 to $12.69.  The share price of MetroPCS common stock continued to decline and now trades approximately 24% lower that it did prior to the announcement on October 3, 2012.

17.     Analyst and investor reaction to the Proposed Transaction has been negative.  The 10% drop in the share price following the disclosure of the Proposed Transaction reflects the markets' negative perception of the terms of the Proposed Transaction.  In addition, analysts had predicted that MetroPCS would retain a bigger stake in the Surviving Entity.  For example, UBS predicted that MetroPCS would retain up to a 38% interest.

18.     On March 1, 2013, the Company reported record financial results for its year ended December 31, 2012.  Nevertheless, MetroPCS shares closed down at $10.14 per share because the MetroPCS Board had agreed to a fixed allocation and had not provided for any kind of "reset" mechanism to account for changed circumstances.  The price of MetroPCS is capped by the Proposed Transaction and in no way reflects the Company's record 2012 results.

**The Special Committee's Recommendation**

19.     On October 2, 2012, the Special Committee approved the Business Combination Agreement and determined that the Proposed Transaction is "appropriate,

advisable and in the best interests of MetroPCS and its shareholders." The positive factors the Special Committee considered as supporting its recommendation included:

(a)  the implied value of the consideration to be received by MetroPCS shareholders, calculated with the assistance of Evercore Group LLC ("Evercore"), the Special Committee's banker, represented a "compelling valuation";

(b)  the MetroPCS shareholders would receive a cash payment of $4.06;

(c)  the MetroPCS shareholders would own 26% of the Surviving Entity; and

(d)  Deutsche Telekom would provide financing in the form of the DT Notes in connection with the Proposed Transaction.

20.  In addition, the Special Committee considered and relied upon the fairness opinion delivered by Evercore, dated October 2, 2012 (the "Fairness Opinion"), in making its decision to recommend the Proposed Transaction. Evercore was directed by the Special Committee to opine on whether the $4.06 cash payment and the issuance of the 74% of Surviving Entity's common stock in exchange for T-Mobile shares was fair from a financial point of view to MetroPCS and the MetroPCS shareholders. As set forth below, the Special Committee directed Evercore to make certain assumptions regarding the DT Notes.

21.  The Defendants, acting upon the recommendation of the Special Committee, recommended that the shareholders of MetroPCS vote in favor of the Business Combination Agreement.

22. On November 16, 2012, MetroPCS filed its Schedule 14(a) Preliminary Proxy Statement with the SEC, as amended by subsequent Schedule 14(a) filings on February 25, 2013, March 5, 2012 and March 12, 2013. In addition, on March 18, 2013, MetroPCS filed Schedule 14A Information which included MetroPCS's March 18, 2013 Investor Power Point Presentation to shareholders (the "2013 Investor Presentation"). The March 5, 2013, March 12, 2013, March 18, 2013 and March 25, 2013 filings (collectively, the "March 2013 Proxy Statement") are materially misleading and/or omit to state material information necessary in order to make the statements therein not false or misleading. As a result, MetroPCS shareholders are unable to make an informed decision on whether to vote in favor of or against the Proposed Transaction.

23. Moreover, while touting the benefits of the Proposed Transaction, since October 2, 2012, Defendant Linquist has sold approximately 28% or over 2 million shares of his personal holdings and Defendant Landy's firm, TA Associates, has sold approximately 3.8 million shares. While stating in public documents that the Proposed Transaction provides a value of $16.45, Defendant Landy sold his shares at $10.00 per share.

24. As discussed below, the Proposed Transaction unfairly favors Deutsche Telekom, offering unequal downside protection to Deutsche Telekom through the DT Notes together with a 74% equity ownership position in the Surviving Entity and complete control over management and the board of the Surviving Entity.

25. One analyst at *Investor Place,* a financial newsletter, noted additional benefits for T-Mobile from the Proposed Transaction:

The second answer is perhaps a more cynical viewpoint that doubts Deutsche Telekom's ultimate motives. Less than a year ago, the German parent company was trying to unload T-Mobile on AT&T in a $39 billion deal that was ultimately stopped by the FCC. There's speculation that Deutsche Telekom is maneuvering to make its U.S. operation – which has lost 10% of its subscriber base in the past two years and failed to land Apple's iPhone smartphone as an option for subscribers – easier to sell.

Reuters says the new T-Mobile would both benefit Deutsche Telekom through higher U.S. stock valuation and provide liquid asset that's more easily sold off if its decides to exit the U.S. market altogether.

26.     T-Mobile officers have not been shy about proclaiming their excitement with the Proposed Transaction and the significant benefits T-Mobile will gain from MetroPCS's role as a pioneer in the unlimited data and 4G markets. T-Mobile's CEO, John Legere, who joined T-Mobile in September 2012 and will stay on as CEO of the Surviving Entity, was quoted on an October 3, 2012 investor conference call as stating that, "Now, what we also have of course is MetroPCS [which] is very strong in the [unlimited data] market that is growing much faster than the rest of the industry. And we are in that space as well, and we see a growth uptick there…"

27.     T-Mobile and Deutsche Telekom will gain enormous benefits and strategic advantage from the Proposed Transaction. These benefits have not been sufficiently incorporated into the deal provided to the MetroPCS shareholders. Defendants' allocation of $4.06 in cash to the existing shareholders of MetroPCS and only 26% in the Surviving Entity undervalues MetroPCS as a standalone company, does not reflect MetroPCS's recent record 2012 financial performance, and is based on outdated EBITDA projections. In addition, the Defendants misrepresent the equity value of MetroPCS by deducting $1.5 billion for future spectrum purchases.

28.     Defendants also failed to consider the impact of the terms of the DT Notes on MetroPCS's shareholders and on the Surviving Entity or to obtain any kind of fairness opinion regarding the DT Notes and the fairness of such financing to the MetroPCS shareholders.

29.     Though Defendants have reissued their recommendation to MetroPCS shareholders as of the March 2013 Proxy Statement, they have not sought or obtained any updated fairness opinion from Evercore on the allocation. Without updated, accurate information based on 2012 actual results and updated projections, the MetroPCS shareholders cannot make an informed decision on whether to vote for or against the Proposed Transaction.

**Background Of The Proposed Transaction**

30.     For several years, MetroPCS has engaged in discussions with third parties regarding possible strategic business transactions. On December 20, 2011, just after Deutsche Telekom's failed attempt to sell its wholly owned subsidiary T-Mobile, Deutsche Telekom contacted MetroPCS to discuss potential strategic opportunities.

31.     As discussions progressed between MetroPCS and Deutsche Telekom, in March 2012, the Board determined to establish a special committee consisting of all the independent MetroPCS directors (the "Special Committee"). Defendant Perry was appointed as chairman of the Special Committee. The Special Committee retained Evercore as its financial advisor.

32.     Between March and September 2012, various proposals were exchanged between Deutsche Telekom and MetroPCS.

33.     On April 26, 2012, MetroPSC reported its financial results for its first quarter ended March 31, 2012 (the "First Quarter 2012"). The First Quarter 2012 results were disappointing.  MetroPCS reported a decline in net income of 63% from operations and an adjusted EBITDA of $262 million.

34.     In the wake of the First Quarter 2012 results, Deutsche Telekom proposed significantly altered terms to MetroPCS.  Deutsche Telekom proposed an equity allocation ratio of the Surviving Entity's shares of 76% for Deutsche Telekom and 24% for the MetroPCS shareholders.  In addition, Deutsche Telekom also indicated that it was no longer interested in a limited voting interest of 49%, and wanted to be able to appoint a majority of the board of the Surviving Entity and determine post-closing management composition of the Surviving Entity.

35.     As a result of MetroPCS's First Quarter 2012 results, Deutsche Telekom's demands substantially shaped the final terms of Proposed Transaction in favor of Deutsche Telekom.

36.     On July 26, 2012, MetroPCS reported its financial results for its second quarter ended June 30, 2012 (the "Second Quarter 2012").  The Company reported record high EBITDA of $477 million.  In response to the Second Quarter 2012 results, MetroPCS's stock price increased from $6.28 to $8.59 per share.

37.     Though MetroPCS reported record high EBITDA and an overall strong financial performance for its Second Quarter 2012, the terms of the Proposed Transaction were not substantially revised and instead continued to favor Deutsche Telekom at the expense of MetroPCS shareholders.  No discussion or consideration appears to have been given to the Company's Second Quarter 2012 results, and the

March 2013 Proxy Statement makes only a passing reference that the Company had "record-high adjusted EBITDA".

38.   On October 30, 2012, MetroPCS reported its financial results for the quarter ended September 30, 2012 (the "Third Quarter 2012").  Once again, MetroPCS exceeded expectations and its adjusted EBITDA of $466 million represented a 42% increase over the same period in 2011.  By then, however, the Proposed Transaction had been agreed to and announced, and the Defendants had failed to obtain any "reset" mechanism to account for record-breaking improvements in MetroPCS's results.

**MetroPCS's Record 2012 Financial Results**

39.   On March 1, 2013, MetroPCS filed its Form 10-K for the year ended December 31, 2012.   The actual adjusted 2012 EBITDA was $1.512 billion, representing a materially higher number than the 2012 forecast number contained in the March 2013 Proxy Statement.  The March 2013 Proxy Statement did not contain any changes reflecting higher-than-expected EBITDA.

40.   In fact, as the chart below from the March 2013 Proxy Statement demonstrates, the actual year-end adjusted EBITDA of $1.512 billion is substantially higher than the projected EBITDA of $1.359 billion for 2013 and very close to projected EBITDA of $1.556 billion for 2014.

| ($ in millions) | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|
| EBITDA (1) | $1,331 | $1,359 | $1,556 | $1,736 | $1,911 | $2,042 |

41.   In light of the better than expected financial results for the Second Quarter 2012, Third Quarter 2012 and for the full year ended December 31, 2012, the

Special Committee was required to consider whether any change in circumstance had occurred between October and March which would affect its views of fairness of the allocation. Such consideration by the Special Committee should have resulted in additional disclosures and a change in the MetroPCS recommendation.

42.     Defendants failed to seek any advice from Evercore regarding these changed circumstances. Nor did they seek an updated Fairness Opinion from Evercore on the allocation. They also failed to supplement or correct the disclosures in the March 2013 Proxy Statement to reflect MetroPCS's actual results and the effect of such actual results on the fairness of the allocation. Instead, Defendants continued to use the stale EBITDA projections to justify the allocation and to convince the MetroPCS shareholders to vote in favor of the Proposed Transaction.

43.     The March 18, 2013 Investor Presentation is materially false and misleading and/or omits material facts necessary in order to make the statements therein not false or misleading. Defendants use the now stale 2013 projected EBITDA of $1.359 billion to justify an equity value for MetroPCS of $1.648 billion. Defendants failed to update the Company's EBITDA projections for 2013 to 2017 to reflect the record results the Company achieved in 2012. Such an update is necessary to present a more accurate portrayal of the equity value of MetroPCS, and to provide shareholders with the complete and accurate information necessary to cast an informed vote. The Defendants knowingly ignored their responsibilities, thereby breaching their duty of care to the MetroPCS shareholders.

44.     Although the March 2013 Proxy Statement included an additional two years of projections, those newly disclosed projections were also stale. They did not address or account for MetroPCS's record results for 2012.

**MetroPCS's Unexplained Deduction of $1.5 billion for Spectrum**

45.     In addition, the March 2013 Proxy Statement calculates an equity value of $1.648 billion which value assumes, *inter alia*, a $1.5 billion deduction of the "cash for spectrum". If as planned, the $1.5 billion is used to purchase spectrum, MetroPCS will have an equity value that includes that asset (presumably valued at cost). If MetroPCS does not purchase the spectrum, it will have the $1.5 billion in cash. Indeed, spectrum is the equivalent of currency and was used as such by the parties in the failed AT&T transaction to pay part of the termination fee. Either way, there is no justification for the deduction of the $1.5 billion from equity value. The asset value of MetroPCS as a going concern may be reduced by $1.5 billion if spectrum is purchased but the reduction in cash is offset by the addition of an equivalent value in the form of the purchased spectrum. Adding the $1.5 billion back into the $1.648 billion equity value of MetroPCS would yield an equity value of $3.148 billion and the appropriate equity ownership split in the Surviving Entity would be 37.1% for MetroPCS shareholders and 62.9% for Deutsche Telekom.

46.     The 2013 Investor Presentation continues to omit any information regarding why the $1.5 billion is deducted from the equity value of MetroPCS. Again, Defendants misrepresent the equity value of MetroPCS by deducting the $1.5 billion for spectrum.

**The Special Committee failed to Inform Itself About the DT Notes**

47.     The Special Committee failed to make an informed decision regarding the impact the DT Notes would have on MetroPCS and its shareholders.

48.     The DT Notes are an integral part of this proposed transaction. The MetroPCS Special Committee considered the fact that the DT Notes will represent a substantial amount of the Surviving Entity's indebtedness to be a negative factor in its deliberations. However, even recognizing that the level of indebtedness was a negative factor, the Defendants knowingly ignored their responsibilities, thereby breaching their duty of care, by failing to determine the impact the DT Notes would have on MetroPCS shareholders going forward and/or failing to take any steps to protect the MetroPCS shareholders from the negative impact of the DT Notes.

49.     Even though the DT Notes are an integral part of the Proposed Transaction, the Special Committee charged with reviewing the transaction did not seek an opinion from its financial advisor, Evercore, regarding the impact of the DT Notes on the Surviving Entity and the MetroPCS shareholders.

50.     In fact, the Evercore fairness opinion expressly fails to address any aspect of the DT Notes. Instead, the fairness opinion states that Evercore "assumed" with "the consent" of the Special Committee that the terms of the DT Notes were no less favorable to MetroPCS than could have been obtained from a third-party lender.

51.     Then, without any input from its own financial advisor on the material terms of the DT Notes, the Special Committee determined that the Proposed Transaction was fair to MetroPCS and its shareholders.

**The March 2013 Proxy Statement Is Materially False And Misleading**

52.     The MetroPCS shareholders are being asked to cast a vote in connection with the Proposed Transaction based upon a materially false and misleading Proxy Statement.

53.     The March 2013 Proxy Statement misrepresents or omits material information regarding the Company's EBITDA projections and the true financial condition of MetroPCS necessary for MetroPCS shareholders to cast an informed vote.

54.     The March 2013 Proxy Statement fails to include the actual adjusted 2012 EBITDA of $1.512 billion. Instead, it presents only the number forecast for 2012.

55.     The March 2013 Proxy Statement materially misrepresents and/or fails to update MetroPCS's EBITDA projections for 2013 to 2017 to reflect the record results the Company achieved in 2012.

56.     The March 2013 Proxy Statement misrepresents and/or omits material information necessary for MetroPSC shareholders to cast an informed vote regarding the impact of the DT Notes on the consideration being received by the MetroPCS shareholder in the Proposed Transaction and on the Surviving Entity.

57.     The March 2013 Proxy Statement misrepresents and/or omits material information necessary to determine whether the DT Notes are in fact on terms no less favorable to MetroPCS and its shareholders than could be obtained from an unaffiliated third party.

58.     The March 2013 Proxy Statement misrepresents and/or omits material information necessary to determine whether any steps were taken to seek third-party financing.

59.     The March 2013 Proxy Statement calculates an equity value of $1.648 billion, which value assumes, inter alia, a $1.5 billion deduction of the "cash for spectrum". The March 2013 Proxy Statement fails to disclose why $1.5 billion is deducted from the MetroPCS equity value. Again, by failing to present a more accurate portrayal of the equity value of MetroPCS and to provide shareholders with complete and accurate information upon which they can cast an informed vote, the Defendants knowingly ignored their responsibilities, thereby breaching their fiduciary duties to the MetroPCS shareholders.

**Defendants Breached Their Fiduciary Duties of Loyalty and Due Care**

60.     The Special Committee was charged with protecting the interest of MetroPCS and its shareholders. The Business Combination Agreement at section 4.5(e) provides that the Special Committee could change its recommendation if an Intervening Event occurs.   An Intervening Event is defined as a "Circumstance material to MetroPCS" where such "Circumstance, or any material consequence thereof, becomes known to the MetroPCS Board prior to the receipt of the MetroPCS Stockholder Approval."   A "Circumstance" is defined as "any event, occurrence, fact, condition, effect, change or development" material to MetroPCS which was not known or reasonably foreseeable to the Board but becomes known to the Board prior to the shareholder vote.   MetroPCS's record 2012 financial results is such an event, occurrence, fact, condition, effect, change or development that is material to MetroPCS particularly in light of the fact that the financial results were materially better than the projections used in the March 2013 Proxy Statement.

61.     Even if the Defendants do not change their recommendation, the Business Combination Agreement explicitly permits them to make all disclosures in accordance with the Federal Securities Laws and their fiduciary obligations. Section 4.5(e) of the Business Combination Agreement provides that, in the case of an Intervening Event and where the MetroPCS Board determines in good faith "after consultation with its outside legal counsel, that failure to do so would be reasonably likely to be inconsistent with the MetroPCS Board's fiduciary obligations to MetroPCS and/or the MetroPCS Stockholders under applicable Law," the Board must disclose all material information to provide for an informed vote by shareholders. Defendants owe all MetroPCS shareholders a duty of complete candor. Once Defendants speak, they are obligated as a matter of fiduciary duty to be completely candid with MetroPCS shareholders.

62.     The Special Committee's fiduciary duties require it to consider whether there has been any change in circumstance from the date the Proposed Transaction was approved to the date of the shareholder vote which would affect its views on the fairness of the Proposed Transaction, change its recommendation or require additional disclosures.   Against a backdrop of record 2012 year-end results for MetroPCS, corresponding weaker actual EBITDA for T-Mobile, the Special Committee's own failure to consider the impact of the DT Notes and failure to obtain any opinion as the fairness of the DT Notes to MetroPCS, the Special Committee should have but failed to consult with and/or ask Evercore to update its fairness opinion. In the intervening months after recommending the Proposed Transaction, the Special Committee has

failed to take any steps to determine if the Proposed Transaction is fair to MetroPCS and its shareholders.

63.     The Special Committee knew that MetroPCS was far outperforming the (now stale) projections on which the Proposed Transaction was negotiated more than 6 months ago. The Special Committee's determination to ignore MetroPCS's performance since June 2012, amounts to an abdication of its responsibilities to MetroPCS shareholders.

64.     Had the Special Committee sought an updated opinion based on MetroPCS's projections revised to take into account the actual 2012 results, MetroPCS shareholders would have been able to evaluate the Proposed Transaction and determine whether to vote in favor of it despite the fact that the allocation unduly favors Deutsche Telekom at the expense of MetroPCS shareholders. MetroPCS shareholders would be equipped with adequate information to determine whether to vote down the Proposed Transaction and continue on a standalone basis. Using actual financial results for 2012 instead of the stale projections, MetroPCS's implied equity value would be $10.02 - $16.19 instead of $7.55 - $12.98 as set forth in the March 2013 Proxy Statement.

65.     The fairness analysis performed by Evercore utilized projected financial information which was prepared during the second quarter of 2012 by MetroPCS management. While the projections used by Evercore in its fairness analysis may have been current when it issued its fairness opinion on October 2, 2012, those forecast/projections have become stale and outdated. The EBITDA forecast included in the March 2013 Proxy Statement for 2012 was $1.331 billion. The actual adjusted EBITDA for the full year 2012 was $1.512 billion.

66.     Defendants have breached their fiduciary duties of care and loyalty by glossing over the changes in MetroPCS's equity value resulting from its record breaking 2012 actual results and by continuing to recommend the Proposed Transaction. Knowing that MetroPCS's financial landscape has changed dramatically since October 2, 2012, the Special Committee has failed to exercise any care in making an informed decision in continuing to recommend the Proposed Transaction and, thus, has acted in bad faith.

67.     The Special Committee failed to make an informed decision regarding the impact the DT Notes would have on MetroPCS and its shareholders. Had the Special Committee and Evercore examined the fairness of the DT Notes, it would have been obvious that the MetroPCS shareholders were being treated unfairly. The estimated average interest rate on the DT Notes of approximately 7.7% is significantly above market. In fact, on March 8, 2013, MetroPCS issued $3.5 billion of unsecured notes priced to yield at 6.44%. In addition, Deutsche Telekom charged T-Mobile, its fully controlled subsidiary, only 4.3% annually. Given the interest rate on the DT Notes, as compared to the prevailing interest rates on the currently outstanding DT/T-Mobile intercompany debt and MetroPCS's own debt, the March 2013 Proxy Statement should provide MetroPCS shareholders with full and complete disclosures about the impact on the MetroPCS shareholders and the Surviving Entity of the $15 billion debt going forward and any attempts by any party to obtain third-party financing.

68.     The Defendants have a duty to ensure that all material facts are conveyed to MetroPCS shareholders and to update any change in material information prior to the shareholder vote. In addition, the Defendants know that the fairness opinion provided

to the Special Committee, upon which it based its recommendation, is also based on stale projections and inaccurate information. The Defendants have breached their fiduciary duty of care by consciously disregarding their responsibilities to the MetroPCS shareholders to disseminate complete and accurate information upon which they can make an informed vote.

### COUNT I
**(For a Permanent Injunction for**
**Violations of Section 14(a) of the Exchange Act, Rule 14a-9)**

69.     Plaintiffs incorporate by reference all previous allegations.

70.     In this Count, Plaintiffs disclaim any attempt to assert any claim for fraud.

71.     Section 14(a) of the Exchange Act, provides that "[i]t shall be unlawful for any person, by the use of the mails or by any means of instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of the title." 15 U.S.C 781.

72.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of circumstances under which it is made, is false and misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.R.F 240.14a-9.

73.     Defendants have issued a March 2013 Proxy Statement with the intention of soliciting shareholder approval for the Proposed Transaction.

74.     The March 2013 Proxy Statement violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. The misrepresented or omitted facts are material because there is a substantial likelihood that a reasonable shareholder would consider the false and misleading statements or omitted facts important in deciding how to vote on Proposed Transaction.

75.     In order to secure shareholder approval of the Business Combination Agreement with Deutsche Telekom, Defendants filed with the SEC and disseminated to MetroPCS shareholders a materially false and misleading Schedule 14(a) Proxy Statement, which violates sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder in the following respects:

(a)     the March 2013 Proxy Statement omits updated financial information and updated projections;

(b)     the March 2013 Proxy Statement omits any disclosures concerning the Special Committee's consideration of the Company's Second Quarter 2012 results and full year 2012 financial results in determining that the Proposed Transaction was fair to MetroPCS and its shareholders;

(c)     the March 2013 Proxy Statement omits any disclosure concerning the Special Committee's consideration of the Company's deduction of the $1.5 billion for spectrum in determining that the Proposed Transaction was fair to MetroPCS and its shareholders

(d)      the March 2013 Proxy Statement omits any disclosure concerning the Special Committee's consideration of the DT Notes in determining that the Proposed Transaction was fair to MetroPCS and its shareholders;

(e)      the March 2013 Proxy Statement omits any disclosure concerning whether the terms of the DT Notes are in fact on terms no less favorable to MetroPSC and its shareholders than could be obtained from an unaffiliated third party;

(f)      the March 2013 Proxy Statement omits any disclosure concerning the Special Committee's reasons for directing Evercore to assume for purposes of its work that the terms of the DT Notes are on terms no less favorable to MetroPSC and its shareholders than could be obtained from an unaffiliated third party;

(g)      the March 2013 Proxy Statement omits any disclosure concerning whether any steps were taken by MetroPCS or Deutsche Telekom to seek third-party financing for the intercompany debt;

(h)      the March 2013 Proxy Statement omits any disclosure concerning how the pricing mechanism of the DT Notes is designed to reflect market conditions; and

(i)      the March 2013 Proxy Statement omits any disclosure concerning why there is a deduction of $1.5 billion for spectrum from the equity value of MetroPCS.

76.      The Proxy Statement, by law, must contain a full, frank and candid discussion of any proposal put before the shareholders for a vote. The March 2013 Proxy Statement must contain all material information in order for shareholders to cast an informed vote. The SEC has encouraged the use of plain English in proxy statements, so

that the average shareholder can understand the advantages and disadvantages of the course of action he or she is being asked to approve.

77.    The March 2013 Proxy Statement at issue here falls woefully short of these standards. It is inaccurate, incomplete and materially misleading. The Defendants have a high duty under the Federal Securities Laws to convey all facts material to the Proposed Transaction to the shareholders of MetroPCS in a complete and readily understandable manner. Fraudulent intent is not required to show a breach of the Federal Securities Laws.

78.    The Defendants have a duty to fully inform themselves regarding the advantages and disadvantages of all corporate transactions. When such transactions are subject to a proxy vote, the Defendants must ensure that all material facts are conveyed to the shareholders, in a way that that they can readily understand, and without bias or omission.

79.    The misrepresentations and omissions in the March 2013 Proxy Statement are material to is, and Plaintiffs will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

80.    The March 2013 Proxy Statement is materially misleading and/or omits to state material information necessary in order to make the statements therein not false or misleading in a violation of the Federal Proxy Laws.

81.    Defendants must be preliminarily and permanently enjoined from violations of the Federal Proxy Laws as Plaintiffs will be harmed if the Proposed

Transaction is approved by a shareholder vote based upon a March 2013 Proxy Statement which fails to comply with the requirements of the Federal Proxy Laws.

## COUNT II
### (Against the Defendants for Violations of Section 20(a) of the Exchange Act)

82.  Plaintiffs incorporate by reference all previous allegations.

83.  The Defendants acted as controlling persons of MetroPCS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of MetroPCS, and their participation in and/or awareness of the Company's operations, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the March 2013 Proxy Statement which Plaintiffs contend is false and misleading.

84.  Each of the Defendants was provided with or had unlimited access to copies of the March 2013 Proxy Statement alleged to be materially misleading prior to and /or shortly after it was issued and had the ability to prevent its issuance or cause the statements to be corrected.

85.  As set forth above, the Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant Section 20(a) of the Exchange Act.

## COUNT III
### (Against All Defendants for Breaches of Fiduciary Duty)

86.  Plaintiffs incorporate by reference all previous allegations.

87.    Defendants have a duty to ensure that all material facts are conveyed to the shareholders and to update any change in material information prior to the shareholder vote.

88.    Defendants know that the fairness opinion provided to the Special Committee, upon which it based its recommendation, is also based on stale projections and materially misleading information.

89.    Defendants have breached their fiduciary duty of care by consciously disregarding their responsibilities to the MetroPCS shareholders to disseminate complete and accurate information upon which they can make an informed vote.

90.    The Board's fiduciary duties require it to consider whether there has been any change in circumstance from the date the Proposed Transaction was approved to the date of the shareholder vote which would affect its fairness analysis and require it to update its fairness analysis, change its recommendation or cause additional disclosures.

91.    Against a backdrop of strong 2012 year-end results for MetroPCS and corresponding weaker actual EBITDA for T-Mobile, and the failure to consider the impact of the DT Notes, the Special Committee failed to take any steps to determine if the Proposed Transaction is fair to MetroPCS and its shareholders.

92.    The Board has breached its fiduciary duty care of by ignoring the changes in MetroPCS's equity value and by continuing to recommend the Proposed Transaction.  Knowing that the financial landscape has changed dramatically since October 2, 2012, the Special Committee has failed to exercise reasonable care in

making an informed decision in continuing to recommend the Proposed Transaction and, thus, has acted in bad faith.

93.     Defendants breached their fiduciary duties by failing to make any informed decision regarding the impact the DT Notes would have on MetroPCS and its shareholders.

94.     The Evercore fairness opinion expressly fails to address any aspect of the DT Notes.  As a result, Defendants knowingly ignored their responsibilities, thereby breaching their duties of care and loyalty.

95.     By the acts, transactions and course of conduct alleged herein, the Defendants will unfairly deprive Plaintiffs of the true value of their MetroPCS investment.

96.     Plaintiffs will suffer harm unless the actions of the Defendants are enjoined.

**WHEREFORE**, Plaintiffs seek the following relief:

   A.     Preliminary and permanently enjoining any shareholder vote based on the materially false and misleading March 2013 Proxy Statement;

   B.     In the event the Proposed Transaction is consummated, rescinding it and/or directing Defendants to account to Plaintiffs for all damages suffered by them as a result of Defendants' wrongful conduct as alleged herein, including rescissory damages;

   C.     Awarding plaintiffs the costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

D.     Granting such other as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

March 28, 2013

ABBEY SPANIER, LLP

By: _____
Arthur N. Abbey
aabbey@abbeyspanier.com
Judith L. Spanier
jspanier@abbeyspanier.com
Jeremy Nash
jnash@abbeyspanier.com
212 East 39th Street
New York, NY 10016
Tel.:   212-889-3700
Fax:   212-684-5191